Siberry v. The State.

Filed March 7, 1893.

———————————◆———————————

No. 16,402.

SIBERRY v. THE STATE.

CRIMINAL LAW.—*Misconduct of Counsel.*—*Argument Before Jury.*—*Comment on Defendant's Demeanor During Trial.*—*Motion to Discharge Prisoner.*—*Practice.*—Where counsel for the State, in a criminal action, in his opening argument to the jury, commented upon the demeanor of the defendant, in the presence of the jury, during the progress of the trial, and also while on the witness stand, and upon objection to such remarks by the defense, the court in the presence and hearing of the jury admonished counsel of the impropriety of such remarks, and counsel explained that he only intended to comment on the defendant as a witness, such remarks by counsel under the circumstances did not amount to reversible error; and a motion to discharge the defendant, because of the above alleged misconduct of counsel, was correctly overruled, even if the remarks of counsel were unwarranted and prejudicial, the relief to which the defendant was entitled, if any, being to a discharge of the jury and the empanneling of a new jury to try the case.

SAME.—*Practice.*—*Argument Before Jury.*—*Stepping Beyond Bounds of Legitimate Argument.*—*When Opposing Counsel can not Complain.*—Where, in a criminal action, counsel for the defendant steps outside the bounds of legitimate argument, and discusses matters not proper to be considered, the defense is in no position to complain if counsel for the State follow them without such bounds and reply to such argument; although discussion ought to be confined to matters properly within the case.

SAME.—*Killing of Wife by Husband.*—*Evidence.*—*Relations Previous to Homicide.*—*Treatment of Wife by Husband.*—Where an indictment charges the defendant with murder in the second degree and with manslaughter in

Siberry v. The State.

the killing of his wife, testimony as to relations existing between the defendant and his wife, previous to the homicide, and as to his treatment of her, is competent.

SAME.—*Evidence.*—*Conduct of Defendant While in Jail.*—*Harmless Error.*— Evidence concerning the conduct of a defendant in a criminal action, while confined in jail awaiting trial, is proper; and evidence which is unimportant, and the admission of which is harmless, does not amount to reversible error.

SAME.—*Evidence.*—*As to Reputation.*—*Cross-Examination as to Positive Knowledge of Conduct Permissible.*—Where, in a criminal action for homicide, a witness on examination in chief had testified as to the defendant's reputation for peacefulness and quietude and as to his treatment of his deceased wife previous to her death, it is not improper to cross-examine such witness as to his knowledge of the defendant's ill treatment of his wife, whom he was charged with having killed.

SAME.—*Homicide.*—*Evidence.*—*Revolver.*—*When Admissible in Evidence.*— The introduction of a revolver in evidence, from which it is claimed the shot was fired which produced the death with which the defendant is charged, and the testimony of a competent witness as to how the revolver could be discharged, is not error when the revolver has been sufficiently identified.

SAME.—*Homicide.*—*Eye Witness to.*—*Appearance of Before Grand Jury.*— *Names of Indorsed on Indictment.*—*Absence of on Trial.*—*Right of State to Proceed with Other Evidence.*—Where there are eye witnesses to a homicide, who appeared before the grand jury, and whose names were indorsed on an indictment therefor, the absence of such witnesses on trial, when due diligence to obtain them is shown by the State, will not prevent the State from introducing other evidence to make out its case.

SAME.—*Instructions to Jury.*—*Reasonable Doubt.*—*Erroneous Instruction as to.* —*Exoneration of Juror From Oath.*—Where the court, in a criminal action, in instructing the jury as to the question of reasonable doubt, said, among other things: "You are not at liberty to disbelieve as jurors if you believe as men; your oath imposes on you no obligation to doubt where no doubt would exist if no oath had been administered," such instruction, in effect, relieves the jury from the obligation of their oath, and amounts to reversible error. Any instruction to the jury having for its purpose or effect the exoneration of a juror from his oath is erroneous.

SAME.—*Instructions to Jury.*—*Reasonable Doubt.*—*Erroneous Definition of.*— In an instruction to a jury on the question of reasonable doubt, the court among other things, said: "A reasonable doubt is such a doubt as the jury are able to give a reason for." This definition of "reasonable doubt" is erroneous and misleading for the reasons, that it puts upon the defendant the burden of furnishing to every juror a reason why he is not satisfied of his guilt with the certainty required by law before there

can be a conviction; that a person often doubts about a thing for which he can give no reason, or has an imperfect knowledge.

From the Wells Circuit Court.

L. Mock, A. Simmons, A. N. Martin and E. C. Vaughn, for appellant.

J. H. C. Smith and W. A. Branyan, for appellee.

OLDS, J.—This was a prosecution against the appellant. The indictment is in two counts. The first count charges murder in the first degree, and the second count charges involuntary manslaughter. The person alleged to have been killed was Emma Siberry, wife of the appellant. There was a motion to quash each count of the indictment, which was overruled and exceptions taken thereto.

The appellant pleaded not guilty. There was a trial by jury and a verdict of guilty of involuntary manslaughter, assessing appellant's punishment at fifteen years in the State prison.

Appellant filed a motion for a new trial, which was overruled and exceptions reserved. The appellant also moved an arrest of judgment, which motion was overruled and exceptions taken.

Errors are assigned on the several rulings of the court. The first alleged error discussed by counsel for the appellant relates to what is contended as being misconduct of counsel for the State in the argument of the cause.

Mr. Simmons, one of the counsel for the State, in the opening argument to the jury, referring to the accused, said: "During the trial of this cause, as he sat there by his counsel, and while on the witness stand, his conduct showed that he did not care for the death of his wife. He sat there and smiled while the witnesses detailed the awful crime." To this statement counsel for appellant at the time objected, and the court sustained the objection, and, in the presence and hearing of the jury, the court admonished counsel that it was improper for counsel to comment upon the appearance or actions of the accused as a prisoner at

the trial, and that he should confine his criticism to the defendant's appearance and actions on the stand as a witness only. Mr. Simmons then remarked that he only intended to comment on the appellant as a witness; whereupon counsel for appellant moved the court "to discharge the appellant from the charge for which he was being prosecuted," and the court overruled the motion, to which ruling the appellant excepted. This ruling was correct. The appellant had testified as a witness, and counsel for the State was commenting upon his testimony and the weight that should be given to it, and in doing so alluded to the conduct of the witness in the presence of the jury, during the trial. It presents a different question from that of a case wherein the accused had not testified as a witness. The defendant had testified as a witness, and counsel had commented upon his conduct, but when objection was made the court sustained the objection and admonished counsel, in the presence of the jury, that his comments in relation to the prisoner's conduct were improper, and counsel explained his remarks as only intending them to apply to his conduct as a witness. As to the ruling of the court on the motion to discharge the prisoner, this ruling was correct, even if the remarks of counsel were unwarranted and prejudicial, for, if the comments of counsel were prejudicial, the extent of the relief to which the appellant would have been entitled was the discharge of the jury and impanneling of a new jury to try the case. He was not entitled to be discharged from the charge upon which he was being tried, and this is what he asked the court to do. He was not entitled to have the jury discharged and a new one impanneled. Jurors must be regarded as reasonably intelligent men, and not to be influenced by mere trivial and unwarranted statements or occurrences during the trial, and especially so when, as in this case, the court admonishes counsel that the statements were improper. The harm, if any could have resulted

from the statement of counsel, must be held to have been corrected by the ruling and admonition of the court. We do not mean to hold that the comments were such as were unwarranted and erroneous if they had not been noticed by the court. The appellant had testified as a witness in his own behalf, and the comments made by counsel as to the conduct of the witness were in relation to such acts of his as had occurred in court during the trial, in the presence of the jury, and it is, to say the least, questionable whether or not, if the court had not held them improper, and admonished counsel against such comments, it would have constituted such prejudicial error as would have entitled the appellant to a reversal of the judgment.

It is further contended that there was prejudicial error in the conduct of Mr. Smith, another of the counsel for the State, in his statement in argument to the jury, in which he said: " Gentlemen of the jury, Mr. Mock, one of the counsel for the defendant has cast a reflection upon the State by charging that it had suppressed the testimony of Jonathan Campbell and his wife, but I want to say to you that it is not true. On the contrary, the State has made every effort to get said witnesses, and has had subpœnas issued." Here appellant's counsel objected to the line of argument being pursued, and Mr. Smith turned to the court and said: " Your Honor, where is the showing made by the State as to these witnesses? It is a paper in the case, and I want to read it to the jury." Whereupon the court said: " It has not been introduced in evidence, I believe, and it would not be proper to read it to the jury." Thereupon Mr. Smith said to the jury: " The court holds it would be improper to read the showing to you, and, therefore, I will not do so."

In relation to this same matter, it is also contended that there was prejudicial error in the statements of Mr. Branyan, in argument, in which he said: " The counsel for the defense complains that the Campbells were not brought into

court by the State. The evidence of the Campbells was taken down in writing at the coroner's inquest, and it is in court, and if defendant's counsel will agree to it we will take time out of the space allotted to me and read it to the jury. The counsel talks about the defendant being in jail and not being able to prepare for his defense; he had the right to have lawyers employed and paid for by the State; he had all the machinery of the law at his command; he could send subpœnas to any county of the State and attach witnesses in its remotest corner and have them arrested and brought into court if necessary," to which remarks and statements of Mr. Branyan the appellant at the time objected, and the court made no ruling upon the objection.

As it appears from the record, these statements of Mr. Mock and Mr. Branyan, in argument, were made in answer to the argument of counsel for the appellant in relation to the absence of Mr. and Mrs. Campbell, as witnesses. It would seem that counsel for the defense, in their argument, desired to base their defense, or gain some advantage for their client on some supposed testimony of the Campbells, or some fact in relation to the Campbells not before the jury, and stepped outside the bounds of legitimate argument to discuss the absence of the Campbells, and their supposed knowledge of the case, and that counsel for the State felt called upon to answer it, and did so in the manner here stated. This mode of conducting an argument in either a criminal or civil case is to be condemned, but when counsel for the defense step outside the bounds of the case and indulge in the discussion of matters not before the jury, and thus pursue a line of illegitimate argument, it comes with ill grace and with poor favor to ask the court to restrain opposing counsel from answering such illegitimate argument, and prevent them from clearing away the rubbish illegitimately brought into the case, and casting it out that it may not mislead the jury. While it

is true that the better practice is to interpose an objection to the first counsel who steps outside and discusses matter not properly before the jury, rather than allow him to proceed and meet it by counter argument, yet when one steps aside and treats a matter as being within the pale of legitimate discussion in the case, having opened the door he can not object if opposing counsel is permitted to answer him, although the court might, and probably ought to confine the discussion at all times to matters properly within the case. It is immaterial to determine whether the statements of counsel were strictly within the bounds of legitimate argument or not, as the door was opened for it by counsel for the appellant, they can not complain if counsel for the State walked in at the door which they had opened.

In this case there is no ruling of the court adverse to the appellant upon which to predicate error. Some of the statements were entirely legitimate. Mr. Mock's denial of the charge made by counsel for appellant, that the State had suppressed the testimony of the Campbells, and the statement of Branyan that the defendant had the benefit of the machinery of the law to compel the attendance of witnesses, were legitimate in answer to the line of argument to which they were addressed. There was no motion addressed to the court with a view of having the statements withdrawn from the jury, or the jury admonished as to their duty to disregard any statement of counsel regarded as illegitimate, nor was there any motion to discharge the jury and demand for a trial by another and impartial jury.

It is no doubt the correct rule that where there is a gross abuse of the privilege of counsel to the manifest prejudice of the accused, the judgment should be reversed, but we do not think there was any such abuse shown in this case as makes it probable that it operated to the prejudice of the accused. We do not think that what occurred would

be liable to affect the decision of an intelligent jury, or lead them to be governed by anything in their decision other than the law and the legitimate evidence in the case.

It is next urged that the court erred in permitting certain witnesses to testify as to the relations existing between appellant and his wife, the deceased, during their short married life, previous to the homicide, and as to his treatment of her. This class of evidence was entirely legitimate, though the particular statements complained of were made in answer to, and were in response to, questions propounded for the purpose of eliciting them, and no objections were made to the questions, but afterwards a motion was made to strike out the answer.

It is next contended that the court erred in permitting one Paterson, a witness, to testify as to the conduct of the appellant while in jail awaiting trial on this charge. This evidence was proper. The particular question objected to related to the regularity with which he took his meals, which, of itself, may have been of no importance, but necessarily, in this class of testimony, as well as that previously referred to, some facts will be developed in course of an examination, which, of themselves are unimportant, but the admission of them is harmless, and it does not constitute reversible error.

It is next contended that the court erred in permitting certain questions to be propounded to, and answered by, one George Yarger, a witness on behalf of appellant, on cross-examination. The witness had testified to the relations existing between the appellant and his deceased wife, and his treatment of her prior to the homicide, and as to appellant's reputation for peacefulness and quietude; and the questions objected to on cross-examination related to his knowledge of the appellant's ill treatment of his wife, and the examination was not beyond the bounds of cross-examination, in view of the examination in chief.

It is contended that the court erred in permitting the re-

Siberry v. The State.

volver from which the State claimed the shot was fired which produced death to be exhibited to the jury, and allowing a competent witness to testify how it could be discharged, for the reason that the evidence fails to identify the revolver as the one from which the shot was fired that penetrated the body of the deceased and produced her death.  There is nothing in this objection.  There was sufficient evidence of identification to entitle this evidence to go to the jury.

Mr. and Mrs. Campbell were eye-witnesses to the homicide.  They were before the grand jury, and their names were indorsed on the indictment.  On the trial, upon the showing by the State that it had made diligent effort to produce the said witnesses, and was unable to do so, the court permitted the introduction of other witnesses to establish the commission of the homicide and the guilt of the defendant, and allowed the State to prove the declarations of the appellant.  This is shown by the bill of exceptions.  It is contended that this was error.  It does not appear that any objection was made to the action of the court in this respect, until after the trial, and then appellant asked a new trial on this account, by reason of surprise.

The record does not present a case where the State should be required to call and examine an eye-witness to the transaction, even if it could be required in any case under our practice.  Certainly the State could not be required to abandon a prosecution which it had abundant evidence to support, by reason of the fact that the eye-witness to the transaction had gone beyond the jurisdiction of the court, and the State had used all due diligence to produce him.  We do not decide that there may not be a case where the State should be required to call the eye-witnesses to the transaction.  What we do decide is that the court, in this case, committed no error in overruling the motion for a new trial based upon this reason.

A question is presented as to the correctness of the in-

structions given by the court in relation to the degree of
certainty with which the guilt of the accused must be es-
tablished to warrant a conviction. It arises out of an ad-
ditional effort of a trial court to formulate and enunciate
a clear and lucid definition of the term *reasonable doubt.*

On this question the court instructed the jury as follows:

"53. The court instructs the jury that, as a matter of
law, the doubt which the juror is allowed to retain in his
own mind, and under which he should frame a verdict of
not guilty, must always be a reasonable one. A doubt
produced by undue sensibility in the mind of the juror, in
view of the consequences of his verdict, is not a reasonable
doubt, and a juror is not allowed to create sources or ma-
terial for doubt by resorting to trivial or fanciful supposi-
tions and remote conjectures as to a possible state of facts
differing from that established by the evidence. You are
not at liberty to disbelieve, as jurors, if you believe as
men. Your oath imposes on you no obligation to doubt
when no doubt would exist if no oath had been adminis-
tered. * * * In a criminal case like the one at bar,
before you can find the defendant guilty, there must not
only be a conscientious belief on the part of each juror of
the defendant's guilt, but there must be a conscientious
conviction, beyond all reasonable doubt, of his guilt. The
jury may conscientiously believe the defendant guilty, and
yet not be convinced to that degree of certainty which the
law requires in order to warrant a conviction.

"54. The jury are instructed that by the words 'rea-
sonable doubt,' is meant actual, substantial doubt, and it
may arise either from the evidence or a want of evidence
in this case. It is that state of the case which, after a
comparison of all the evidence, leaves the minds of the
jurors in that condition that they can say that they feel an
abiding conviction of the guilt of the defendant, and are
fully satisfied of the truth of the charge.

"55. The court instructs the jury that, in a legal sense,

a reasonable doubt is a doubt which has some reason for its basis. It does not mean a captious or speculative doubt, or a doubt from mere whim, caprice, or groundless conjecture. A reasonable doubt is such a doubt as the jury are able to give a reason for.

"56. I instruct you that evidence is sufficient to remove a reasonable doubt when it is sufficient to convince the judgment of ordinarily prudent men with such force that they would act upon that conviction without hesitation in their own most important affairs or concerns of life."

To say the least, these instructions, if not erroneous, were calculated to confuse and tend to mislead the jury.

Of the term "reasonable doubt" it was said by the Chief Justice, in delivering the opinion in *Commonwealth* v. *Webster*, 5 Cush. 295: "Then, what is reasonable doubt? It is a term often used, probably pretty well understood, but not easily defined." The same may be said of it at this time. If the jury had been instructed that they must be satisfied of the guilt of the accused beyond a reasonable doubt before they could return a verdict of guilty, and that if they had a reasonable doubt of his guilt they should return a verdict of not guilty, they would probably have understood their duty and discharged it quite as well and in accordance with the meaning and spirit of the law as if a long and varied definition had been given them. But the court having given various definitions of the term, we are required to examine them and see if they are correct or incorrect or misleading, and if incorrect in any of the elements, the judgment must be reversed.

The clause in instruction numbered 53, stating: "You are not at liberty to disbelieve as jurors if you believe as men; your oath imposes on you no obligation to doubt where no doubt would exist if no oath had been administered," in effect relieves the jury from the obligation of their oath. While it probably can not be said that the fact that a juror

is under oath should create a doubt which would not other-
wise exist, yet an oath is essential to install him as a juror.
The oath is administered for a purpose, and the juror acts
under the solemnity of his oath in his deliberations. It
enjoins upon the juror the solemn obligation to carefully
consider that he will "well and truly try, and true deliv-
erance make, between the State and the prisoner," and any
instruction from the court, having for its purpose or its
effect the exoneration of the juror from his oath, and per-
mitting him to disregard it, is erroneous, and the paragraph
from the instruction last quoted could have no other effect
or purpose than to tell the jurors that they occupied no
other or different relations than if they were not acting
under oath. We do not think such an instruction should
receive our approval.

Again, in the 55th instruction the jury is told that "A
reasonable doubt is such a doubt as the jury are able to
give a reason for." The term reasonable doubt would
seem to imply a doubt for which there was a reason, but
when analyzed and considered in the connection in which
it is used in a criminal case, it seems to us that this defini-
tion is erroneous and misleading. It is possible, that the
term, "beyond a reasonable doubt," which has crept into
the criminal law as expressing the degree of certainty with
which the guilt of the accused shall be proven to justify a
conviction, is not as comprehensive as some other language
would be; that the term of itself is uncertain. We have
a doubt in relation to things for which we can give no
reason and of which we have imperfect knowledge. It is
the want of sufficient knowledge in relation to the facts
constituting the guilt of the accused that causes the juror
to doubt. It is the want of information and knowledge
that creates the doubt. This court has said, in effect, that
to justify a conviction the evidence must satisfy each juror
of the guilt of the accused, with such a degree of certainty
as he would not hesitate to act in matters of the highest

Siberry v. The State.

importance to himself affecting his dearest and nearest interests, under circumstances where he was not compelled to act, but was free to act or not, as he deemed proper. It is the lack of information and knowledge satisfying the members of the jury of the guilt of the accused, with that degree of certainty required by the law, which constitutes a reasonable doubt, and if jurors are not satisfied of the guilt of the accused with such degree of certainty as the law requires, they must acquit, whether they are able to give a reason why they are not satisfied to that degree of certainty or not.

The burden is on the State to furnish each juror such information as that he, acting under oath, is so convinced of the defendant's guilt that he would not hesitate to act upon his convictions of the guilt of the defendant in relation to matters involving his most important affairs affecting his dearest and nearest interests.

In the case of *Wall* v. *State*, 51 Ind. 453 (465), this court said:

"Many learned judges have endeavored to define 'reasonable doubt,' but perhaps it is not susceptible of a clearer definition than that expressed in the plain words 'reasonable doubt;' for it is doubt which is cognizable by the reason, and dwells in the understanding, as distinguished from a doubt which is raised by fear, hope, love, hatred, fancy, feeling, prejudice, interest, or some of the motives which sway our nature, and which flit through the emotions instead of resting in the mind."

A juror is presumed to act honestly under the solemnity of his oath, with a view of reaching a correct conclusion as to the guilt or innocence of the accused. When he has done so, if he is not satisfied of his guilt with that certainty which would cause him to act unhesitatingly in matters of the highest importance to himself affecting his dearest interests, in such case, the law says he shall not con-

vict, because the proof is not sufficient to satisfy the mind of the juror with that certainty upon which alone he shall convict. Where this state of mind exists, the juror has what is termed in the law a reasonable doubt of the guilt of the accused, though the juror may not be able to give a reason for such doubt, except he might say the evidence is not sufficient to satisfy me of the guilt of the accused with the certainty required by the law, but that is no reason for the doubt. It is but a reason why the accused should not be convicted. Such an instruction as the one we are considering can, we think, only lead to confusion, and to the detriment of the defendant. A juror may say he does not believe the defendant is guilty of the crime with which he is charged. Another juror answers that if you have a reasonable doubt of the defendant's guilt give a reason for your doubt. And, under the instruction given in this cause, the defendant should be found guilty unless every juror is able to give an affirmative reason why he has a reasonable doubt of the defendant's guilt. It puts upon the defendant the burden of furnishing to every juror a reason why he is not satisfied of his guilt, with the certainty which the law requires, before there can be a conviction. There is no such burden resting on the defendant or a juror in a criminal case.

In *Garfield* v. *State*, 74 Ind. 60, the language of Burrill Circumstantial Ev. 199, is quoted and approved as properly expressing the degree of certainty required to authorize a conviction: "A state of impressions produced by facts, in which a reasonable mind feels a sort of coercion or necessity to act in accordance with it; the conclusion presented being one which can not, morally speaking, be avoided, consistently with adherence to truth."

In *Brown* v. *State*, 105 Ind. 385, the trial court attempted to make a new definition for a reasonable doubt, and this court held the definition defective.

In *Rhodes* v. *State*, 128 Ind. 189, the trial court told

the jury that a reasonable doubt "must be one for which a reason can be given." And this court said that it was very doubtful as to its being correct, but did not pass upon the question.

The question here presented was before the Supreme Court of Nebraska in two separate cases, in which the trial court had instructed the jury in almost the identical language used in the instruction in this case, and that court held in each case that the instruction was erroneous and calculated to mislead the jury. *Cowan* v. *State*, 22 Neb. 519; *Carr* v. *State*, 23 Neb. 749.

In *Cross* v. *State*, 31 N. E. Rep. 473, this court held an instruction similar to instruction 53 given in this case erroneous. We are of the opinion that the instructions were erroneous in the two particulars we have discussed, and for this reason the judgment must be reversed.

Counsel for appellant contend that the verdict is contrary to the law and the evidence, and follow this contention by a long and able discussion to show that the *corpus delicti* is not proven, and contend that the admissions of the accused alone are not sufficient to authorize a conviction. As the case will have to be reversed on the instructions, we deem it unnecessary to consider these questions.

Judgment reversed, with instructions to grant a new trial, and the clerk is directed to issue the proper order for the return of the prisoner.

Filed March 7, 1893.