GILCOAT v. STATE.

Opinion delivered November 13, 1922.

1. LARCENY—INSTRUCTION AS TO FELONIOUS INTENT.—The word "felonious," as used in the larceny statute (Crawford & Moses' Dig., § 2483), means that at the time of the taking and asportation there must exist in the mind of the taker the intent to convert or appropriate permanently to his own use the property of another person; and an instruction defining "feloniously" as referring to a crime charged amounting to a felony, and that a felony is any crime that incarcerates the wrongdoer in the penitentiary was incorrect and calculated to confuse and mislead the jury.

2. LARCENY—INSTRUCTION AS TO FELONIOUS INTENT.—It would be proper in a larceny case to tell the jury that if the defendant took and carried away another's hogs with the intent at the

time of appropriating them to defendant's own use and permanently depriving the owner of the use and benefit thereof, then such taking and carrying away would be felonious.

3. LARCENY—INSTRUCTION AS TO INTENT.—In a prosecution for the theft of hogs, an instruction that the State was not required to establish by parol testimony the intent of the accused, and that a man is presumed under the law to mean the things that he does, and to intend the things that he did, was abstract and improper, where there was some evidence that defendant drove the hogs to his home and put them in his pen, believing them to be the property of a neighbor, and that he had been requested to do so.

4. LARCENCY—PRESUMPTION AS TO INTENT.—No presumption can be indulged from the mere fact of the taking of property that it was done with felonious intent, and thus put on the defendant the burden to prove otherwise.

5. LARCENY—INSTRUCTION—POSSESSION OF STOLEN PROPERTY.—While the unexplained possession of recently stolen property is a fact from which the jury is justified in drawing an inference of guilt, it is improper for the court to tell the jury that such a fact is *prima facie* evidence of guilt, and that the jury should or must draw such an inference from such fact, as it is exclusively within the province of the jury whether they will make such inference.

6. CRIMINAL LAW—INSTRUCTION AS TO REASONABLE DOUBT.—An instruction in a felony case that a reasonable doubt is not an imaginary, speculative, captious or fanciful doubt, but simply a doubt for which as reasonable men the jury can give a reason was inherently erroneous, and therefore subject to a general objection.

Appeal from Arkansas Circuit Court, Southern District; *George W. Clark,* Judge; reversed.

*John W. Moncrief,* for appellant.

*J. S. Utley,* Attorney General, *Elbert Godwin* and *W. T. Hammock,* Assistants, for appellee.

WOOD, J . This is an appeal from a judgment of conviction of grand larceny on an indictment which charged the appellant, in two counts, of the crimes of grand larceny and receiving stolen property. The testimony for the State tended to prove that Wade Langham lived about four miles southwest of Dewitt, Arkansas, in Arkansas County. He owned a number of hogs which

ranged about four miles from his home across Mill Bayou. His hogs were marked with a crop off the left ear and a swallow-fork in the right. Langham received information that some hogs that were marked with his mark were in a pen of an old chicken-house in the possession of the appellant. Appellant lived ten miles from Langham and about six miles from where the hogs had usually ranged. Langham, in company with some of his neighbors, went to appellant's home and identified the hogs as his property. Appellant was not at home when Langham first identified the hogs, nor on the day when he went and got them. Appellant lived in the edge of the timber. There was prairie between appellant's house and Langham's. Langham had not seen his hogs for about a month and a half before the appellant put them up. Langham had forty-seven head on the range and lost twenty-six. He got nine head of his hogs from the appellant on the 5th of November. If the hogs had gone straight, they would have gone over some prairie. Part of appellant's pen was walled up on three sides and the other side was wire. The hogs could not be seen from the highway. The appellant did not make any claim for the hogs. The hogs were not fresh marked, and they had not been in any way disfigured. One of the hogs was not marked at all.

The testimony for the appellant tended to prove that on one Sunday, while appellant and his brother were hunting, on returning home they noticed some hogs. Appellant thought the hogs belonged to one Mr. Brewer, and they drove them home and put them in the pen Sunday evening. Appellant killed two hogs on Monday, but they were his own hogs and marked with his own mark.

Brewer testified that he had some hogs to stray away, and that he met the appellant and told him about these hogs and about the mark. It was only a few months afterward that he heard about the appellant getting into this trouble. Witness told the appellant about this mark, but didn't know whether appellant remembered what he said the mark was or not.

Another witness testified that he met appellant in the fall of 1919 and the appellant inquired of him in regard to a mark that he was certain about and asked witness if witness knew Brewer's mark. Appellant said to witness, ''I believe I have got a bunch of his (Brewer's) hogs in the pen,'' and described the mark, and asked witness if that was Brewer's mark, and witness told him that he didn't know, but it was something like that.

The court, in instruction No. 3, defined the word ''feloniously'' as follows: '' * * feloniously, that is, the crime charged amounts to a felony, and the theft of one hog or six hogs is a felony under the laws of the State of Arkansas. A felony is any crime that incarcerates the wrongdoer in the penitentiary for some period of time; eight hogs, the personal property of this man, did steal, take and carry away. * * * To this indictment the defendant pleads not guilty; that casts upon the State the burden of proving the material allegations in the indictment, and that beyond a reasonable doubt. The material allegations in this indictment and in both counts of it is that the property was stolen in the first charge; that it was stolen by Wes Gilcoat; that the theft committed was felonious, and, if he stole them, that it was felonious, because there can be no theft of hogs under the laws of this State without it being a felony, and that the crime charged was committed within three years before the return of this indictment, which was returned upon the 18th day of January, 1922.''

Instructions No. 6 and No. 7 are as follows:

''6. I have told you that, before you can convict this defendant, the State is required to prove his guilt beyond a reasonable doubt. A reasonable doubt is not an imaginary doubt, it is not a speculative doubt, it is not a captious doubt, it is not a fanciful doubt. A reasonable doubt means no more and no less than the words, simply a doubt for which as reasonable men you can give a reason.''

''7. The State is not required to prove the guilt of any man to a mathematical certainty; everything de-

pending upon human testimony is subject to some species of a doubt.  To be convinced, within the meaning of the law, beyond a reasonable doubt, is that state of mind of the jurors, after a fair, impartial, unbiased consideration of all the testimony in the case, you have an abiding conviction to a moral certainty of the truth of the charge. If the evidence in this case convinces you that this property has been stolen and that this defendant received the property that was found in his possession, that makes a *prima facie* case of guilt where property has been recently stolen and possession is unexplained.''

"10.   The mere taking of property, whatever it is, where the indictment charges that the same constitutes a felony, that is grand larceny, is not sufficient to warrant the jury in returning a verdict of guilty.  There must be an unlawful taking, there must be a felonious taking upon the part of the accused.  Now, the State is not required to establish by parol testimony the intent of the accused in any case.  A man is presumed under the law to mean the things that he does.  He is presumed under the law to intend to do the things that he did do.  You determine the intent of the individual by his acts and the proof in the particular case on trial.  You cannot look down into a man's mind and say just with actual certainty what his purpose, intent and motives are in the doing of a thing, but you determine these things from the facts and circumstances in the case.''

"11.   I have previously told you what felonious intent meant as used in these instructions, and before you would be warranted in convicting the defendant you must further find, if he took the hogs, that he did so with the felonious intent of appropriating the same to his own use, and if he did that, that would constitute grand larceny, and that he intended to appropriate to his own use, that would constitute the depriving of the true owner of his property; one cannot be committed without the other.''

The appellant presented the following prayers for instructions:

"1. The mere taking up of the property of another person without the consent of the owner does not constitute larceny. And before you could convict the defendant in this case it would be and is incumbent upon the prosecution to show beyond a reasonable doubt that the defendant unlawfully took the hogs with the felonious intent of depriving the owner thereof and of converting same to his own use. And if the prosecution fails to show the felonious intent beyond a reasonable doubt, it is your duty to acquit the defendant. Or if, upon the whole case, you have a reasonable doubt as to the intent of the defendant, you will not find him guilty."

"2. The defendant is presumed to be innocent of taking property with the felonious intent to convert to his own use, and this presumption attends and protects him throughout the trial, unless overcome by evidence proving guilt beyond a reasonable doubt."

1. Under the evidence the issue as to whether or not appellant was guilty of the larceny of Langham's hogs, as charged in the indictment, was one of fact for the jury, but this issue was not submitted upon correct instructions. The indictment in the first count charged the appellant with the crime of grand larceny committed as follows: "Eight hogs, the personal property of Wade Langham, unlawfully and feloniously did take, steal, and drive away." The court, in its third instruction, defined the word "feloniously" used in the indictment as follows: "* * * feloniously, that is, the crime charged amounts to a felony, and the theft of one hog or six hogs is a felony under the laws of the State of Arkansas. A felony is any crime that incarcerates the wrongdoer in the penitentiary for some period of time." Under our statute larceny "is the felonious stealing, taking, and carrying, riding or driving away, the personal property of another." Sec. 2483, C. & M. Digest. The word "felonious," as used in the statute, means that at the time of the taking and asportation there must exist in the mind of the taker the intent to convert or appropriate

permanently to his own use the property of the other person. In other words, to constitute larceny the taking and asportation must be *animo furandi.*

The term ''felonious,'' as employed in our larceny statute, is not used with reference to the kind and value of the property taken, nor to designate the punishment therefor. It is not for the purpose of distinguishing crimes that are punishable in the State Penitentiary and those not so punished, but it is used here to character-ize the intent that must exist in the mind of the taker at the time of the taking and asportation. It must be a felonious intent as above defined. See *Mason* v. *State,* 32 Ark. 238; *Douglas* v. *State,* 91 Ark. 121; *Gooch* v. *State,* 60 Ark. 5—9; *Fulton* v. *State,* 13 Ark. 168; *James* v. *State,* 85 Ark. 360; *Bailey* v. *State,* 92 Ark. 216; *Littlle* v. *State,* 119 Ark. 430; *Ridgell* v. *State,* 110 Ark. 606.

The definition of ''feloniously,'' as given by the court in its third instruction, was therefore not correct. It was calculated to confuse and mislead the jury.

Instruction No. 11 refers to the definition of ''feloni-ous intent'' as used in instruction No. 3, which instruc-tion, as we have seen, does not correctly define ''felonious intent.'' Instruction No. 11 would have been correct if the court had told the jury that if the appellant took and carried away Langham's hogs with the intent, at the time, of appropriating the hogs to appellant's own use and permanently depriving Langham of the use and benefit thereof, then such taking and carrying away would be felonious, and the jury, if they so found, would be warranted in returning a verdict of guilty against the appellant. But such is not the effect of the instruction. It is argumentative, and, when taken in connection with the definition of ''felonious intent'' in previous instruc-tions, it was calculated to mislead the jury. The appel-lant did not deny that he took and carried away hogs claimed by Langham, but he did, deny that he took the hogs with the felonious intent of appropriating them to his own use and permanently depriving the owner of his

property. His sole defense was that he drove the hogs to his home and put them in his pen believing them to be the property of one Brewer, and that he had been requested to do so by Brewer. In view of this testimony, the court erred in telling the jury, in instruction No. 10, that the State was not required to establish by parol testimony the intent of the accused in any case, and that a man is presumed under the law to mean the things that he does; that he is presumed under the law to intend the things that he did do, etc. Instruction No. 10 is argumentative in form and erroneous in substance. Such an instruction has no application in a trial of grand larceny, and was especially abstract and misleading when applied to the facts of this record.

In this case no presumption could be indulged to the effect that when the appellant put the hogs in his pen he intended by so doing to convert them to his own use and to permanently deprive Langham, the owner, of the use and benefit thereof. As is said by Mr. Underhill: "The law will not countenance any presumption which, by overcoming the presumption of innocence, will cast the burden of proving his innocence upon the defendant. Hence, where presumptions apparently conflict, the law will recognize the presumption of innocence alone and will impose no restriction on its operation, but will apply it to the whole scope of the charge against the accused and to every fact essential to the crime." Sec. 19, p. 35, Underhill on Criminal Evidence. See also 1 Elliott on Evidence, § 94.

To constitute larceny, as we have shown, it was essential that the State prove the *lucri causa;* that is, that the appellant took and carried away the hogs with a felonious intent, at the time of the taking and asportation, to convert the same to his own use and permanently deprive the owner of the use and benefit of his property. Of course, it was proper for the jury to take into consideration, in determining whether such felonious intent existed, the fact and manner of the taking and all the

circumstances thereof, but no presumption could be indulged from the mere fact of the taking that it was felonious, and thus put the burden on the defendant to prove otherwise.

In *Mason* v. *State, supra,* we said: "The mere fact of the taking and carrying away ,does not raise a presumption of guilt, or ·that the taking was to steal, or *lucri causa,* for the sake of profit or gain, but such felonious or criminal intent must be shown by circumstances connected with the taking." See also Underhill on Criminal Evidence, § 292; *Martin* v. *State,* 97 Ark. 212-216, and cases there cited.

In its instruction No. 7 the court told the jury "that, if the evidence in this case convinces you that this property had been stolen and that this defendant received the property that was found in his possession, that makes a *prima facie* case of guilt, where property has been recently stolen and possession is unexplained." The appellant was on trial for grand larceny, the offense charged in the first count of the indictment, and also for the crime of receiving stolen goods, as contained in the second count of the indictment. The language of the instruction just quoted was not by express terms made applicable only to the offense of receiving stolen property, of which offense the appellant, by the verdict of the jury, was acquitted. The instruction did not distinguish between the two offenses. It was as applicable to one as to the other, and therefore it cannot be said that the appellant was not prejudiced by the giving of the instruction, if it were erroneous. The instruction invaded the province of the jury, inasmuch as the language quoted was an instruction on the weight of the evidence. While the unexplained possession of recently stolen property is a fact from which a jury would be justified in drawing an inference of guilt, yet it is improper for the court to tell the jury that such a fact is *prima facie* evidence of guilt, and that the jury should or must draw such an inference from such fact. It is exclusively within

the province of the jury to draw or not to draw such an inference. The language of the instruction quoted was tantamount to telling the jury that, if the appellant was found in the possession of property that had been recently stolen, which possession was unexplained, they should find him guilty. Such testimony is relevant because it tends to prove guilt, and is proper for the jury to consider in determining guilt or innocence of the accused, but the court must not tell the jury that such testimony is *prima facie* evidence of guilt. Nor can the court tell the jury that from such evidence they should draw an inference of guilt. Because, to tell the jury that such fact makes a *prima facie* case of guilt, is equivalent to telling the jury that it is sufficient to convict. This the court could not do. *Shepherd* v. *State,* 44 Ark. 37; *Blankenship* v. *State,* 55 Ark. 244; *Duckworth* v. *State,* 83 Ark. 192; *Reeder* v. *State,* 86 Ark. 341.

Instruction No. 6 is an instruction on reasonable doubt. This instruction does not correctly declare the law, and it is also objectionable as being argumentative in form. In *Darden* v. *State,* 73 Ark. 315, the court gave an instruction consisting of four paragraphs, at least one of which was not on the subject of reasonable doubt. In one of the paragraphs the court, among other things, told the jury that a "reasonable doubt does not mean every doubt that may flit through your mind in a consideration of this case, but a doubt for which you could give a reason if called upon to do so." This court, speaking through Judge BATTLE, condemned the language as defective, which told the jury that a reasonable doubt is one for which a juror could give a reason if called upon to do so.

The instruction under review here contains the defect which we expressly disapproved in *Darden* v. *State, supra.* The instruction here embodies but a single proposition of law defining reasonable doubt. It was inherently erroneous and therefore subject to a general objection. *Bennett* v. *State,* 95 Ark. 100-107; *Teel* v. *State,*

129 Ark. 180. Judge RIDDICK, speaking for this court in *Bell* v. *State,* 81 Ark. 16, in an illuminating opinion on the subject of a reasonable doubt, shows how any effort to define it in any other than substantially the simple form that has been so often approved by this court, is wholly unnecessary and may prove, as it did in that case, erroneous. We could not hope, and will not assay, to improve upon what was there said. The instruction of the court in this case does not follow any precedent which we have heretofore approved, and contains the error of defining a reasonable doubt as a doubt "for which, as reasonable men, jurors can give a reason." This language is not only condemned by our own court, but also has been expressly disapproved in other jurisdictions. *State* v. *Cohn,* 108 Ia. 208; *Siberry* v. *State,* 33 N. E. 681; *Morgan* v. *State,* 27 N. E. 710; *Abbott* v. *Territory,* 20 Okla. 119; *Klyce* v. *State,* 78 Miss. 450. See case note *State* v. *Grant,* 11 A. & E. Ann. Cases, p. 1020. As is well said in *Klyce* v. *State, supra,* a juror "should not be under any legal compulsion to have to give or be able to formulate and state the reason which may raise a reasonable doubt in his mind and conscience." We are aware that there are authorities to the contrary. See *State* v. *Grant, supra,* case note, p. 1019-20. But the view of our own court is in accord with the better reason, if not the weight of authority.

Other assignments are urged for reversal, but it is believed what we have already said will furnish a correct guide for another trial, and that other errors complained of will not occur again.

For the errors indicated the judgment is reversed, and the cause remanded for a new trial.