The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Carol SHERMAN, Defendant–Appellant.

No. 98CA2254.

Colorado Court of Appeals, Div. III.

Oct. 11, 2001.

Certiorari Denied May 13, 2002.

Ken Salazar, Attorney General, Esteban A. Martinez, Assistant Attorney General, Denver, CO, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Joan E. Mounteer, Deputy State Public Defender, Denver, CO, for Defendant–Appellant.

Opinion by Judge ROTHENBERG.

Defendant, Carol Sherman, appeals the judgment of conviction entered on a jury verdict finding her guilty of two counts of theft. We affirm.

Defendant was the treasurer and a sales person for a mobile home company. According to the prosecution's evidence, she stole money borrowed by two customers in connection with their attempted purchases of mobile homes.

## I.

Defendant first contends the trial court denied her a fair trial by granting the prosecution's challenge for cause to a potential juror. We disagree.

To ensure a fair trial, the trial court must excuse jurors who demonstrate bias or prejudice. *People v. Young*, 16 P.3d 821 (Colo.2001).

Section 16–10–103(1)(j), C.R.S.2001, provides that the court must sustain challenges for cause where:

[t]he existence of a state of mind in the juror evinc[es] enmity or bias toward the defendant or the state; however, no person summoned as a juror shall be disqualified by reason of a previously formed or expressed opinion with reference to the guilt or innocence of the accused, if the court is satisfied, from examination of the juror or from other evidence, that he will render an impartial verdict according to the law and the evidence submitted to the jury at the trial.

*See also People v. Young, supra.*

When reviewing the trial court's ruling on a challenge for cause, we examine the ruling for an abuse of discretion. *See Carrillo v. People*, 974 P.2d 478 (Colo.1999). The trial court is in a unique position to evaluate demeanor and body language of jurors. The abuse of discretion standard discourages appellate courts from interfering with such rulings based on a cold record. *Carrillo v. People, supra; see Morgan v. People*, 624 P.2d 1331, 1332 (Colo.1981) (where juror repeatedly indicated he would have difficulty applying the proper burden of proof, trial court abused its discretion by refusing to excuse him).

During voir dire, the prosecutor questioned one of the potential jurors regarding her understanding of the reasonable doubt instruction that the court had read to the panel. The prosecutor first asked the juror whether there was a distinction between reasonable doubt and "beyond all doubt." She responded that she thought they could mean the same thing. The prosecution next asked whether she thought the prosecution had to prove a crime beyond "any and all doubt in your mind." The juror replied affirmatively.

After further clarifying the meaning of reasonable doubt, the prosecution again asked the juror whether she would require the People to "prove a crime was committed beyond any and all doubt," and the juror again replied affirmatively.

At the prosecution's request, the trial court excused this juror for cause. The court gave more than one rationale for its decision to excuse her, including that she "remained

firm in her belief that the evidence had to be proved *beyond any and all doubt"* (emphasis added)

The trial court had the benefit of viewing the juror and assessing her demeanor under all the circumstances, and we view its ruling as a determination that this juror was unwilling or unable to follow the court's reasonable doubt instruction. Accordingly, looking at the record as a whole and applying the standard established in *Carrillo v. People, supra,* we perceive no abuse of discretion by the trial court in excusing this juror.

## II.

Defendant next contends the trial court erred in denying her motion for mistrial because the court impermissibly elaborated on the model jury instruction regarding reasonable doubt. Although we agree part of the court's oral instruction was erroneous, we conclude reversal is not required.

At the beginning of the voir dire, the court read the model instruction on reasonable doubt to the jury panel as follows:

> Reasonable doubt means doubt based upon reason and common sense which arises from a fair and rational consideration of all the evidence, or the lack of evidence, in the case. It is a doubt which is not vague, speculative or imaginary doubt, but such a doubt as would cause reasonable people to hesitate to act in matters of importance to themselves.

CJI–Crim. 3:04 (1983).

After the trial court dismissed one potential juror because of her misapprehension of reasonable doubt, as discussed earlier, the court attempted to clarify any confusion in the other jurors' minds by orally instructing them as follows:

> You realize that the proof or the burden on the People is to prove beyond a reasonable doubt not beyond any doubt at all. And one way to look at this is that *a reasonable doubt is a doubt for which you could give a reason.* It's a rational, objective statement of why you feel that something hasn't been proven, or why you have a doubt. As opposed to speculating about it or just guessing that gee, I just—I don't know, I

just feel like they didn't prove it. That is not good enough. *The proof needs to be beyond a reasonable doubt as I defined it earlier.* (emphasis added)

Defendant did not object when the court gave this oral instruction. Later, however, after the jury was sworn, she moved for a mistrial, contending that the emphasized portions of the court's oral instruction were erroneous.

### A.

We conclude that the trial court erred in elaborating on reasonable doubt. Counsel have not cited, and we are unaware of, any reported Colorado case addressing the propriety of an instruction describing a reasonable doubt as "a doubt for which you could give a reason." However, this issue has been addressed by other jurisdictions. There is a split of authority whether this or a similarly worded definition of reasonable doubt is error, and if so, whether it mandates reversal of the defendant's conviction.

We have found only one jurisdiction that has held such an instruction is not erroneous. *See State v. Whipple,* 324 S.C. 43, 476 S.E.2d 683, 687 (1996)(court found no error in an instruction defining reasonable doubt as doubt "for which you could give a reason"; court did not refer to a "moral certainty"). *But see State v. Manning,* 305 S.C. 413, 409 S.E.2d 372, 374 (1991) (reversing a conviction based on three errors, including an instruction defining reasonable doubt as "a doubt for which you can give a real reason" and as a "moral certainty").

A number of other jurisdictions, in reported cases dating from 1891 to 1922, have expressly disapproved such an instruction and have concluded that defining reasonable doubt in these terms is an error requiring reversal. *See Gilcoat v. State,* 155 Ark. 455, 244 S.W. 723 (1922); *Morgan v. State,* 48 Ohio St. 371, 27 N.E. 710 (1891); *Gibbons v. Territory,* 21 Okla. 340, 1 Okla.Crim. 198, 96 P. 466 (1908). In holding such an instruction "inherently erroneous," these jurisdictions have explained that a juror "should not be under any legal compulsion to have to give or be able to formulate and state the reason

which may raise a reasonable doubt in his mind and conscience." *Gilcoat v. State, supra*, 155 Ark. at 465, 244 S.W. at 727 (quoting *Klyce v. State*, 78 Miss. 450, 454, 28 So. 827, 828 (1900)).

In more recent cases, several jurisdictions have criticized the use of such language in the reasonable doubt instruction, but have held reversal was not automatically required. *See Ex parte McWilliams*, 640 So.2d 1015 (Ala.1993) (criticizing instruction that defines reasonable doubt as a "doubt for which you *can* give a reason," but determining that the instruction as a whole was not infirm); *Sulie v. State*, 269 Ind. 204, 379 N.E.2d 455 (1978) (accepting such an instruction when not coupled with other erroneous instructions, and distinguishing *Siberry v. State*, 133 Ind. 677, 33 N.E. 681 (1893), which reversed defendant's conviction based on several improper instructions); *State v. Hudson*, 286 N.J.Super. 149, 668 A.2d 457, 459 (1995) (stressing that "portions of a charge alleged to be erroneous cannot be evaluated in isolation," court disapproved judge's comments but was convinced "the remarks were not capable of producing an unjust result").

We are persuaded by those jurisdictions that have disapproved instructions advising the jury that a reasonable doubt is a doubt for which one could give a reason, because it imposes on jurors the requirement that they not only maintain a reasonable doubt regarding a defendant's guilt, but also articulate a reason for that doubt. Further, Colorado's model jury instruction does not contain such a requirement. *See* CJI–Crim. 3:04.

### B.

■ However, we reject defendant's contention that the oral instruction violated her constitutional right to due process.

In support of this contention, defendant relies on *Cage v. Louisiana*, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990), in which the United States Supreme Court held that a Louisiana jury instruction on reasonable doubt violated the Due Process Clause of the United States Constitution because it lowered the threshold of doubt necessary to convict the defendant. The reasonable doubt instruction there equated reasonable doubt with "grave uncertainty" and "actual substantial doubt," and the Court concluded the instruction, when considered in reference to "moral certainty," violated the defendant's right to due process. *See also Sullivan v. Louisiana*, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993) (erroneous reasonable doubt instruction was structural error mandating reversal).

Although the holding in *Cage* remains intact, the standard for reviewing jury instructions enunciated in *Cage* was later disapproved by the Court in *Estelle v. McGuire*, 502 U.S. 62, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). There, the Court clarified that the appropriate standard of review for an ambiguous instruction was as set forth in *Boyde v. California*, 494 U.S. 370, 380, 110 S.Ct. 1190, 1198, 108 L.Ed.2d 316, 329 (1990), namely, "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way" that violates the Constitution. *Estelle v. McGuire, supra*, 502 U.S. at 72, 112 S.Ct. at 482, 116 L.Ed.2d at 399.

The Court in *Estelle* also stated that:

It is well established that the instruction "may not be judged in artificial isolation," but must be considered in the context of the instructions as a whole and the trial record.

*Estelle v. McGuire, supra*, 502 U.S. at 72, 112 S.Ct. at 482, 116 L.Ed.2d at 399 (quoting *Cupp v. Naughten*, 414 U.S. 141, 147, 94 S.Ct. 396, 400, 38 L.Ed.2d 368, 373 (1973)).

Applying that standard here, we conclude that even assuming the oral instruction given by the trial court was ambiguous because it departed from the language of the model instruction, it nevertheless did not violate defendant's right to due process.

The Connecticut Supreme Court has rejected a constitutional challenge to a similar instruction about giving a reason for the doubt. *State v. Jeffrey*, 220 Conn. 698, 601 A.2d 993 (1991). There, the trial court instructed the jury that a reasonable doubt is "a doubt for which if necessary you can give an explanation of to your fellow jurors in the jury deliberation room." *State v. Jeffrey, supra*, 601 A.2d at 1004.

The Connecticut Supreme Court concluded such an instruction was improper, but declined to hold it constitutionally deficient *when considered in the context of the entire charge. State v. Jeffrey, supra,* 601 A.2d at 1004 ("such an articulation requirement, although improper, did not render an otherwise adequate instruction on reasonable doubt constitutionally defective").

We reach a similar conclusion. While the trial court here incorrectly advised the jury that a reasonable doubt was a "doubt for which you could give a reason," it contrasted such doubt with mere "speculating" or "guessing." Further, the court advised the jury that the proof needed to be "beyond a reasonable doubt as I defined it earlier," and its earlier definition was correct.

Accordingly, when the objectionable language in the court's oral instruction is considered in the context of the entire charge, we conclude the trial court did not lower the reasonable doubt standard. We therefore reject defendant's contention that her constitutional right to due process was violated by the trial court's elaboration of the reasonable doubt instruction.

## C.

■ We also conclude that the court did not abuse its discretion in denying defendant's motion for mistrial.

A mistrial is a drastic remedy that is warranted only when prejudice to the accused is so substantial that its effect on the jury cannot be remedied by any other means. *People v. Laurson,* 15 P.3d 791 (Colo.App. 2000). Absent a gross abuse of that discretion and prejudice to the defendant, we will not disturb a trial court's decision to grant or deny a motion for a mistrial. *People v. Peoples,* 8 P.3d 577 (Colo.App.2000).

We are required to consider the instructions as a whole, and there is no error if the instructions, taken together, adequately inform the jury of the law. *People v. Manier,* 184 Colo. 44, 518 P.2d 811 (1974); *see also Chambers v. People,* 682 P.2d 1173 (Colo. 1984) (requiring analysis of all relevant factors when reviewing jury instructions).

We conclude that reversal is not required where, as here, the jury instructions as a whole were adequate and not coupled with other erroneous instructions on reasonable doubt.

Here, the trial court gave the jury the correct reasonable doubt instruction at the inception of the case and gave it again in writing at the end of the case. The court also advised the jury in its oral comments that reasonable doubt should be contrasted with mere "speculating" or "guessing" and added that this instruction was "one way to look at" reasonable doubt, implying there were other ways to perceive it. The court also referred back to the model instruction already given, which defendant concedes was proper.

In addition, defendant failed to make a contemporaneous objection to the trial court's elaboration of the reasonable doubt instruction. Had such an objection been made, the court would have had the opportunity either to correct itself and to refer the jury to the model instruction, or in its discretion, to bring in a new jury panel.

Under these circumstances, we conclude the trial court's error in elaborating on the reasonable doubt instruction did not affect defendant's substantial rights. *See* Crim. P. 52(a); *Ex parte McWilliams, supra* (instruction as a whole was not infirm); *Sulie v. State, supra; State v. Hudson, supra,* 668 A.2d at 459. Hence, the court did not abuse its discretion in denying a mistrial.

## III.

In a related argument, defendant maintains that the elaboration on the model instruction evinced partiality by the trial court, violating her constitutional right to a fair trial. Her argument hinges on the impropriety of the instruction's substance tainting the jury deliberations, and not the motives of the trial court in giving the instruction. However, given our conclusion that the reasonable doubt instruction did not substantially affect defendant's rights, we reject this contention.

## IV.

Defendant next contends the trial court erred by denying her motion for a new trial in which she alleged juror misconduct and violation of the court's sequestration order. We disagree.

### A.

■ Defendant maintains that the trial court applied the wrong standard in addressing her allegations of juror misconduct. She further asserts that a person observing the trial had inappropriate contact and communications with a juror. We perceive no basis for reversal.

In referring to the burden of proving juror misconduct, the trial court stated:

> It is improper for either side to contact a juror and try to ascertain exactly how they arrived at their verdict. And jurors are not supposed to be asked to comment on that particular point. But they can be asked about what is referred to ... as extraneous prejudicial information, which I think this case is concerned with.

> And it is my understanding of the law that when this issue is raised about the jury's relying on extraneous prejudicial information, there has to be a showing that they actually did hear or see or whatever, they learned about this kind of information, and that simply has not been demonstrated today.

> The law cited by the People I think is correct in that the Court is not to presume that the statements that were made here actually did cause a prejudicial effect to the defendant.

*People v. Hayes,* 923 P.2d 221 (Colo.App. 1995), discussed the standard to be applied where a motion for new trial is based on juror misconduct. It instructs the trial court to evaluate the allegation of juror misconduct to determine whether there is a reasonable possibility that the verdict was tainted by the introduction of outside information into the deliberations. *Hayes* further requires that the defendant show prejudice arising from the misconduct.

■ If a juror was exposed to outside information that might taint the verdict in the slightest, it is within the court's discretion to grant a new trial. *People v. Moore,* 701 P.2d 1249 (Colo.App.1985).

■ The trial court's determination of such a motion will be overturned only when it constitutes an abuse of discretion. *People v. Hayes, supra.*

Here, the thrust of the trial court's commentary was accurate. It recognized that a defendant must show both that the jurors actually heard or saw the extraneous information and that the misconduct prejudiced the defendant. This standard is substantially similar to that set forth in *Hayes* and *Moore.*

Contrary to defendant's contentions, a different result is not required because one of the jurors waved and smiled at a court observer during the trial, and the court observer reportedly called defendant a "crook" outside the courtroom in the presence of the jurors. The record indicates that the trial court was aware of these circumstances when it denied defendant's motion for a new trial, and it was in the best position to evaluate the degree of prejudice to defendant.

We therefore perceive no abuse of discretion in the trial court's denial of defendant's motion for a new trial based on juror misconduct.

### B.

■ Defendant next contends the trial court abused its discretion in denying her motion for new trial motion based on a violation of the sequestration order. Defendant also characterizes this as "witness tampering." We are not persuaded.

Despite the trial court's standard sequestration order, the court observer reportedly left the courtroom, conversed with witnesses, and made comments to them disparaging defendant's character. However, there was no evidence that the court observer discussed any of the court proceedings with the witnesses, and when the trial court was informed of her conduct, it instructed her not to have any further contact with the witnesses.

The determination whether a sequestration order has been violated is within the sound discretion of the trial court. *People v. Brinson*, 739 P.2d 897 (Colo.App.1987). The defendant must show that the violation caused prejudice in order to establish an abuse of discretion. *People v. Wood*, 743 P.2d 422 (Colo.1987).

Here, the trial court specifically instructed the court observer that while she had a right to watch the proceedings, she was not to have any contact with the witnesses. She advised the court that she would comply with the court's order.

The trial court found that the comments about defendant's deficient character that reached the witnesses, while improper, were insignificant in that they did not relate to the testimony offered by the witnesses. Nor does the record reflect that defendant was prejudiced by the court observer's comments.

Under these circumstances, we conclude the trial court did not abuse its discretion in denying the motion for a new trial based on the violation of the sequestration order.

Judgment affirmed.

Judge JONES and Judge NIETO concur.