379 N.E.2d 455 (1978)
Eugene SULIE, Appellant (Defendant below),
v.
STATE of Indiana, Appellee (Plaintiff below).
No. 677S407.
Supreme Court of Indiana.
August 18, 1978.
Dissenting Opinion October 4, 1978.
Ronald V. Aungst, Valparaiso, Forrest Bowman, Jr., Indianapolis, for appellant.
*456 Theodore L. Sendak, Atty. Gen., Dennis K. McKinney, Deputy Atty. Gen., Indianapolis, for appellee.
HUNTER, Justice.
The defendant, Eugene Sulie, was charged by indictment with first-degree murder, Ind. Code § 35-13-4-1 (Burns 1975). He was convicted on this charge by a jury and sentenced to life imprisonment. This direct appeal raises the following issues:
1. Whether the trial court erred by admitting into evidence a bullet found on the defendant at the time of his arrest;
2. Whether the trial court erred by admitting testimony that the defendant had asked for an attorney after he was given his Miranda warnings;
3. Whether the trial court's instruction on reasonable doubt was erroneous;
4. Whether the trial court erred by refusing to give two of defendant's instructions; and
5. Whether the trial court erred by limiting the cross-examination of the state's witness, Talbert McClendon.
The events of the night of the crime can be summarized from the record. Judy and Talbert McClendon went to visit Judy's father, Eugene Joseph, around 9:00 p.m. on the night of February 23, 1976. They left after about half an hour and went to a bar. Then they returned to Mr. Joseph's house around 2:00 a.m. Mr. Joseph started to get dressed and Talbert and Judy walked out the door and started toward their van which they had parked on the north side of the house. A man, whom Talbert recognized as the defendant, stepped out in front of the van holding a gun. Talbert had known the defendant for six years and was positive of his identification.
Defendant shot Talbert in the chest and the impact spun him around so he did not see what happened next. Talbert heard Judy run off toward an alley. Then he heard her screaming and heard shots. He started running but tripped and fell. He heard Judy screaming, "Daddy, help me," and then more shots. He heard defendant talking to Judy and calling her a `bitch.' Mr. Joseph had come to his door in time to see a man chasing Judy and firing at her. She fell down a basement stairway but Mr. Joseph could not identify the man who shot her since it was dark there. Judy had been shot twice and was dead when the police arrived.

I.
The defendant objected to the admission of a bullet taken from his coat pocket by the arresting officer. The basis for the objection was that since the arrest was improper, the bullet was taken in an illegal search and seizure and should have been suppressed. It is not necessary for us to consider the alleged impropriety of the arrest since there was other overwhelming evidence of defendant's guilt. We have held that:
"[E]rror in the admission of evidence wrongfully obtained in violation of the right of the accused to be free from unreasonable searches and seizures is harmless, and will not result in reversal, if such evidence made no contribution to the verdict."
Candler v. State (1977) Ind., 363 N.E.2d 1233, 1240. Talbert McClendon positively identified the defendant as the person who shot him and his wife and this testimony was uncontradicted. The discovery of a .38 caliber bullet in the defendant's pocket had no more than a slight evidentiary value and was certainly not decisive of guilt. The record as a whole indicates that this evidence was not likely to have had a prejudicial impact on the jury and its admission was harmless. Mitchell v. State (1972) 259 Ind. 418, 287 N.E.2d 860.

II.
The defendant pled not guilty by reason of insanity. At the trial, the arresting officer testified that after he gave defendant the Miranda warnings, the defendant asked for an attorney. The defendant now argues that the request for an attorney is similar to silence in response to the Miranda warnings and that this testimony burdened his constitutional rights. While it is true that silence in response to the Miranda warnings may not be shown and such silence may not even be used to impeach defendant's testimony, United States v. Hale (1975) 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99, the defendant has cited no authority for his novel proposition that a request for an attorney is similar to silence.
Furthermore, there was probative value to this testimony as evidence bearing upon defendant's sanity. Evidence of defendant's *457 demeanor at the time of his arrest is relevant to the question of his sanity and is therefore admissible. Howard v. State (1976) 265 Ind. 503, 355 N.E.2d 833. When the defendant has the presence of mind to request an attorney, this is evidence of his sanity and is admissible as such.

III.
The defendant next argues that the court's preliminary and final instructions on reasonable doubt contained a phrase which constituted reversible error. The court gave a lengthy definition of reasonable doubt which included the sentence, "It is a doubt for which a reason can be given, arising from a fair and impartial consideration and weighing of all the evidence in the case." In support of his contention that this was error, the defendant cites Siberry v. State (1893) 133 Ind. 677, 33 N.E. 681, where the Court found an instruction containing the phrase "a reasonable doubt is such a doubt as the jury are able to give a reason for" to be erroneous. However, the Court in Siberry found that there was a second error in the instructions and reversed because of the two errors found.
We are not persuaded that the complained-of phrase in the instant case, taken in the context of the whole instruction, must be considered reversible error. The court was using this phrase to emphasize the idea that the doubt must be based upon a consideration of all the evidence and cannot be based upon mere whim or speculation.
This Court has recently held that while it is wiser to employ the conventional language defining reasonable doubt which has been accepted over a number of years, "[W]e do not think that it can be said that only that language will adequately instruct a jury." Brown v. State (1977) Ind., 360 N.E.2d 830 at 836.
While by this holding we are not approving a departure from the conventional language defining reasonable doubt, we do find that the trial court's instruction sufficiently covered the elements of reasonable doubt in the instant case. A reasonable doubt must be more than a mere whim or speculation or mere possibility of guilt. Pfeifer v. State (1972) 152 Ind. App. 315, 283 N.E.2d 567. It is a doubt which arises from the evidence or lack of credible evidence. Brown v. State, supra. The court's instruction when considered as a whole was not erroneous.

IV.
Defendant next contends that the refusal of two of his tendered instructions was error. One of the instructions told the jury that if a reasonable doubt existed as to which of two or more offenses defendant was guilty of, they were to find him guilty of the lowest offense which had been proven beyond a reasonable doubt. While it is true that the court did not give an instruction using those identical words, the substance of this instruction was covered by the court's instructions and verdict forms on first-degree murder, second-degree murder, voluntary manslaughter, and involuntary manslaughter. The giving of instructions lies largely within the discretion of the trial court and it is not error to refuse a requested instruction whose substance is adequately covered by other instructions which are given. Hackett v. State (1977) Ind., 360 N.E.2d 1000.
The second refused instruction concerned the definition of mental disease and a statement that the jury was not to be bound by definitions given by expert witnesses. This instruction was also covered by two of the court's instructions and was therefore properly refused. Hackett v. State, supra.

V.
Defendant's final allegation of error concerns a portion of the cross-examination of the state's witness, Talbert McClendon. The cross-examination at this point concerned the events that happened to Talbert on the night of the shooting. Talbert testified that he and Judy had gone to a bar in Gary after the first visit to her father at 9:00 p.m. Then Talbert had left Judy and gone to a bar in Chicago with a friend. They returned to the Gary bar around 1:00 a.m. Defendant had been allowed to ask several questions about this trip to Chicago but finally the court sustained an objection by the state on the basis of relevancy. Nothing related to the instant crime had been brought out by the questioning.
It is clearly established that the conduct and scope of cross-examination lies within the sound discretion of the trial court and the court's rulings will not be reversed unless clear abuse of discretion is shown. Strickland v. State (1977) 265 Ind. 664, 359 N.E.2d 244. In this case, there has been no abuse since the defendant was given a chance to show a connection between the *458 witness's trip to Chicago and the instant crime and failed to do so.
For all the foregoing reasons there was no trial court error and the judgment of the trial court should be affirmed.
Judgment affirmed.
GIVAN, C.J., and PIVARNIK, J., concur.
PRENTICE, J., concurs in result.
DeBRULER, J., dissents with opinion to follow.
DeBRULER, Justice, Dissenting.
Appellant requested an attorney after the arresting officer advised him of his right to the assistance of counsel. The arresting officer was allowed to relate this to the jury. The majority dismisses appellant's challenge to this evidence as a "novel proposition" unsupported by citations of authority. I do not believe that the novelty of appellant's argument is sufficient reason to dismiss it.
The Sixth Amendment guarantees the right of the accused to the assistance of counsel, just as the Fifth recognizes his privilege against self-incrimination. In Miranda v. Arizona, (1966) 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, requires that a suspect in custody be advised of these rights before interrogation. In Hale v. United States, (1975) 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99, and Doyle v. Ohio, (1976) 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91, the United States Supreme Court held that a person who exercised his right to remain silent at the time of his arrest could not be impeached with that silence. The reasons for this rule were not only that such silence lacked probative value, Doyle v. Ohio, supra, at 426 U.S. 617, 96 S.Ct. 2244, but also because it is fundamentally unfair that a suspect be advised that he has a right to be silent, only to have his exercise of that right turned against him at trial. Ibid. at 426 U.S. 618-19, 96 S.Ct. 2245.
The latter rationale applies with equal, if not greater, force to a suspect's request for an attorney. Revelation of such a request to the jury is a bald invitation to infer that the suspect is acknowledging his guilt. I would hold that an accused who exercises his right to the assistance of counsel is no less entitled to be protected from the use of his exercise of the right against him at trial than an accused who claims his right to remain silent.
The majority's assertion that appellant's defense of insanity rendered his request for an attorney relevant is correct; the demeanor of an accused is certainly relevant to the determination of his sanity. But since not all relevant evidence is admissible, the relevancy of appellant's request does not resolve the issue. In Stevens v. State, (1976) Ind., 354 N.E.2d 727, we held that notwithstanding frequent broad statements in the opinions of this Court that the defense of insanity opens the door to otherwise inadmissible evidence, the assertion of such defense did not render admissible a communication excludable under the spousal privilege. The prohibition upon the penalizing of the exercise of a constitutional right is a constitutional privilege, and is similarly unaffected by the interposition of an insanity defense. Admission of the officer's testimony describing appellant's request for an attorney was error.