**Eugene K. SULIE, Appellant (Petitioner below),**

v.

**STATE of Indiana, Appellee (Respondent below).**

No. 45S00–8611–PC1012.

Supreme Court of Indiana.

May 4, 1988.

Rehearing Denied Aug. 11, 1988.

Susan K. Carpenter, Public Defender, Hector L. Flores, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Jay Rodia, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Petitioner–Appellant Eugene K. Sulie was found guilty by a jury in 1976 of first degree murder and was sentenced to life imprisonment. Sulie appealed his conviction directly to this court and his conviction was affirmed. *Sulie v. State* (1978), 269 Ind. 204, 379 N.E.2d 455.

On October 23, 1984, Sulie filed a *pro se* petition for post-conviction relief which later was amended and submitted to the court by counsel on September 20, 1985. Sulie's petition for post-conviction relief was denied by the trial court on December 3, 1985, and he now appeals, raising the following issues:

1. error of the trial court in permitting into evidence Sulie's post-arrest request for an attorney;

2. ineffective assistance of counsel;

3. error in giving a final instruction on reasonable doubt;

4. failure of the State to produce an item of evidence; and

5. alleged perjury of a State's witness.

## I

Sulie argues the court erred by denying his Motion for Relief from Judgment which was predicated on the retroactive application of *Wainwright v. Greenfield* (1986), 474 U.S. 284, 106 S.Ct. 634, 88 L.Ed.2d 623. Sulie has been unsuccessful in raising the same issue in the federal courts and in his original appeal. *Sulie v. Duckworth* (7th Cir.1982), 689 F.2d 128, *cert. denied* 460 U.S. 1043, 103 S.Ct. 1439, 75 L.Ed.2d 796; *Sulie*, 379 N.E.2d at 456–57.

In *Wainwright*, the United States Supreme Court announced that the due process rights of a criminal defendant were violated when the prosecutor was permitted to comment during final argument that the defendant had refused to answer questions and requested counsel subsequent to his arrest, indicating rational thought and consideration belying his claim of insanity. Such comment was found to be impermissible and not relevant to prove the defendant was sane at the time he committed the offense of sexual battery. The *Wainwright* Court relied on *Doyle v. Ohio* (1976), 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed. 2d 91. *Doyle* held it was fundamentally unfair to assure a defendant in *Miranda* warnings that silence will carry no penalty and then to use that silence in the determination of the defendant's guilt or innocence. The *Wainwright* Court rejected the argument that *Doyle* does not control because proof of sanity is significantly different from proof of the commission of the underlying offense.

> The point of the *Doyle* holding is that it is fundamentally unfair to promise an arrested person that his silence will not be used against him and thereafter to breach that promise by using the silence to impeach his trial testimony. It is equally unfair to breach that promise by using silence to overcome a defendant's plea of insanity.

*Wainwright*, 474 U.S. at 292, 106 S.Ct. at 639. The *Wainwright* Court further stated, "... the state's legitimate interest in proving the defendant's behavior appeared to be rational at the time of his arrest can be served by carefully framed questions that avoid any mention of the defendant's exercise of his constitutional rights to remain silent and to consult counsel." *Id.* at 295, 106 S.Ct. at 640.

The concurring opinion of Justice Rehnquist, joined in by the Chief Justice, pointed out that the prosecuting attorney had discussed the defendant's silence and noted the Attorney General had not contested the Court of Appeals' conclusion that any error was not harmless. *Wainwright*, 474 U.S. at 296, 106 S.Ct. at 641. He found that much of the conduct and many of the comments made by the defendant did not represent "silence" but were, in fact, statements made by defendant, legitimately used by the State to show his rational thought and understanding at the time. Justice Rehn-

quist noted the questions and answers put to the police during their testimony and on which the prosecutor commented during closing argument were done without objection from the defense. Here, there was an objection to the question posed to the police officer.

The defense contends that Sulie's request for counsel connotes a choice to remain silent. Although the majority in *Wainwright* did not directly discuss this issue, Justice Rehnquist did in his concurring opinion. He stated a defendant's invocation of his right to an attorney would be largely irrelevant in the case of most defenses but would surely be relevant in the context of a claim of insanity. *Wainwright*, 474 U.S. at 297, 106 S.Ct. at 642. Justice Rehnquist also felt that as such a minor portion of the prosecutor's argument was devoted to the subject it might reasonably have been considered harmless error had that question been raised by the Attorney General. *Id.* at 301, 106 S.Ct. at 644.

Our conclusion is the issue is resolved by determining whether or not the State exploited the defendant's silence in response to his plea of insanity. In this case, the trial court allowed only one question and answer on the subject. The court, in a hearing outside the presence of the jury, had ordered that no questions be asked with reference to Sulie's silence and that the witness be directed to make no comment on Sulie's silence. This order was followed. The interrogating police officer was asked if Sulie requested an attorney and he answered "Yes." No further evidence was offered on the subject and no comment was made by the prosecuting attorney on this evidence.

■ A post-conviction petitioner has the burden of proving the allegations of his petition by a preponderance of the evidence. *Mato v. State* (1985), Ind., 478 N.E. 2d 57, 60. We are not convinced that Sulie has carried his burden to show there is a serious question about the accuracy of his guilty verdict or which persuasively affects the determination of his guilt. *See Rowley v. State* (1985), Ind., 483 N.E.2d 1078; *McPhearson v. State* (1974), 262 Ind. 468,

318 N.E.2d 355. There was a great deal of evidence presented at the original trial regarding Sulie's sanity which included opinions of two psychiatrists both of whom found he was not insane. There also was evidence he had been confined in the Norman Beatty Hospital for a number of years prior to the commission of the crime. Talbert McClendon who was shot by Sulie when Judy was killed, had known Sulie for approximately six years and testified Sulie had boasted to him that he could "beat a murder rap" by pleading insanity. Considering the context of all this evidence before the jury on the issue of insanity, the possibility is remote that the jury, in the absence of one question and an answer regarding the question from an attorney, would have concluded other than they did. Sulie fails to present reversible error on this issue.

## II

Sulie contends he was denied his Sixth Amendment right to effective assistance of counsel by the deficiencies in the performance of his trial attorneys. The specific claim is his attorneys failed to seek a mistrial when it was revealed that several prospective jurors may have discussed the nature of a prior murder charge brought against Sulie and his subsequent confinement in a mental institution. The post-conviction court noted that at the time this issue arose an examination of the prospective jurors was conducted by the trial court and a subsequent admonishment was given to the jurors advising them they were not to discuss such issues nor were they to use such issues in deciding the case should they be selected as jurors. The identity of the prospective jurors involved in the alleged discussion is not given nor is there any showing any of them were selected as jurors that tried the case. Further, there is no showing such discussions in any way tainted the jurors who were selected and tried the case. Moreover, evidence of Sulie's prior confinement at Norman Beatty Hospital was revealed throughout the trial since that evidence was relative to the question of Sulie's sanity.

■ To prevail on his claim, Sulie must show that his attorney's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Sulie must also show that the defense was prejudiced by the deficient performance. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction resulted from a breakdown in the adversary process that renders the result unreliable. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, *reh. denied* (1984), 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864; *Jones v. State* (1986), Ind., 495 N.E.2d 532, 534. Sulie fails to show that counsel's errors were so serious as to deprive him of a fair trial and that the alleged deficient performance prejudiced his defense to the extent he was deprived of a fair trial, a trial whose result was reliable. He has failed to demonstrate entitlement to relief on this issue.

### III

■ Sulie asserts the court erred by reading final instruction No. 10 on the principles of reasonable doubt to the jury. This issue was raised unsuccessfully in Sulie's direct appeal. *Sulie*, 379 N.E.2d at 457. Sulie claims we are required to review this issue in view of the subsequent opinion by the United States Supreme Court in *Sandstrom v. Montana* (1979), 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39. Sulie incorrectly applies the holding in *Sandstrom* to this case. *Sandstrom* reviewed a case in which the jury was instructed: "The law presumes that a person intends the ordinary consequences of his voluntary acts." *Sandstrom*, 442 U.S. at 512, 99 S.Ct. at 2453. The Court held such an instruction creating a presumption with respect to a person's intent impermissibly shifted the burden of proof to the defendant to establish that he did not possess the mental capacity to commit the crime. The instruction in the instant case regarding when a reasonable doubt may exist in no way implies Sulie had any burden of proof. The language "a doubt for which reason may be given" did not create a presumption that Sulie was required to respond to. As this court found in the original appeal, the phrase was found in a lengthy definition of reasonable doubt in which the court was explaining to the jury what a reasonable doubt was and how they were to consider and weigh the evidence.

> We are not persuaded that the complained-of phrase in the instant case, taken in the context of the whole instruction, must be considered reversible error. The court was using this phrase to emphasize the idea that the doubt must be based upon a consideration of all the evidence and cannot be based upon mere whim or speculation.

*Sulie*, 379 N.E.2d at 457.

### IV

■ Sulie claims the state withheld exculpatory evidence in the form of a black hat discovered at the scene of the crime but which was inadvertently lost by the investigating police officer. The evidence was that Detective Douglas found a black hat at the scene of the crime but was unable to find any evidence to relate the black hat to this crime or any of the persons involved in it. Detective Douglas testified he took the hat and had it in his desk drawer at one point but that it became lost and he had no knowledge of what happened to it. Sulie now claims this hat might have proved someone else committed this crime and it therefore represented exculpatory evidence which should have been produced by the state. We see no merit to this contention. Sulie offers no evidence the hat had any relevancy or probative value in this action. The scene of the crime was a public place in which other items also were found, such as a wig that was not indicated to have been related to this action. No witness testified any of the persons involved in this crime wore such a black hat. Sulie was directly identified by witnesses to the crime and, in fact, did not deny he was the perpetrator and presented an insanity defense. To prevail on this issue Sulie must estab-

lish the state failed to disclose evidence which is material to the defense and which may be exculpatory. *Brady v. Maryland* (1963), 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed. 2d 215. Sulie has wholly failed to meet his burden on this issue.

## V

■ Finally, Sulie claims the post-conviction court erred by failing to find that witness Talbert McClendon committed perjury during the trial. Sulie asserts that witness Eugene Joseph's testimony conflicts with McClendon's testimony. Sulie also claims McClendon's lack of credibility is evidenced by the fact McClendon was convicted of the crime of burglary three years after Sulie's trial. However, credibility is to be determined by the jury, not by this court. Also, we fail to understand how future acts of a witness determine his credibility at the time of trial. The post-conviction court found there was absolutely no evidence presented to indicate McClendon was guilty of perjury and Sulie furnishes no such evidence in this appeal.

The post-conviction court is confirmed.

GIVAN, J., concurs.

SHEPARD, C.J., concurs with separate opinion.

DeBRULER, J., dissents with separate opinion in which DICKSON, J., concurs.

SHEPARD, Chief Justice, concurring.

Sulie's argument concerning the use of his post-*Miranda* request for counsel rests on the assumption that *Wainwright v. Greenfield*, 474 U.S. 284, 106 S.Ct. 634, 88 L.Ed.2d 623 (1986), can be applied retroactively to his 1976 trial. Assuming that to be so, it is apparent that a violation of Sulie's *Miranda* rights can be subjected to a constitutional harmless error analysis. *Fencl v. Abrahamson*, 841 F.2d 760 (7th Cir.1988). I am satisfied that the minor reference to Sulie's post-*Miranda* request for counsel did not contribute to the jury's verdict and thus join the majority in affirming the trial court's denial of Sulie's petition.

DeBRULER, Justice, dissenting.

At appellant's trial Officer Douglas testified under direct questioning by the trial prosecutor in the following manner:

Q Did you advise him what he was under arrest for?

A Yes.

Q Did you advise him of his Miranda rights?

A Yes.

\* \* \* \* \* \*

Q Did he ever indicate to you that he didn't understand them?

A No.

Q Did he ask for any medical assistance at this time?

A No.

Q Did he ask to contact an attorney?

A Yes.

Defense counsel had, moments before the above testimony, objected to evidence that Mr. Sulie had asked for an attorney, on the basis that it was a response to an advice of *Miranda* rights. The trial prosecutor agreed that it was such a response, and revealed that it had been among additional statements by Sulie about his exercise of Fifth Amendment rights which the prosecution did not intend to offer. The trial court overruled the objection and permitted the question on the express basis that it was relevant on the issue of insanity.

This court held in its opinion resolving appellant's direct appeal that the request for counsel in response to *Miranda* warnings is unlike silence in response to *Miranda* warnings, and did not fall under the exclusionary rule of *Doyle v. Ohio* (1976), 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91, which holds that an exercise of the right to remain silent after warnings cannot be used to impeach the defendant. *Sulie v. State* (1978), 269 Ind. 204, 379 N.E.2d 455. It was my opinion in dissenting in *Sulie, id.,* that it was as fundamentally unfair to use ones exercise of the right to counsel against him at trial as it was to use his exercise of the right to remain silent against him at trial, where that exercise

was called for by the *Miranda* advisements. The majority in *Sulie, id.,* expressly held:

> "When the defendant has the presence of mind to request an attorney, this is evidence of his sanity and is admissible as such."

In *Wainwright v. Greenfield* (1986), 474 U.S. 284, 106 S.Ct. 634, 88 L.Ed.2d 623, the Supreme Court has declared the exercise of the right to counsel the equivalent of the exercise of the right to remain silent for the purpose of the exclusionary rule of *Doyle. Wainwright* was decided after our opinions in *Sulie v. State, supra,* and in my view is now available to Sulie in this post-conviction appeal. Seven Justices behind the majority opinion in *Wainwright* have now clearly condemned the trial court's ruling at Sulie's first trial that his exercise of the right to counsel was admissible as relevant upon the issue of insanity.

Appellant Sulie is entitled to post-conviction relief in the form of the right to a new trial unless the constitutional error in the admission of his exercise of the right to counsel against him is harmless beyond a reasonable doubt. I am unable to say that the jury did not use Sulie's response to the warnings as an appreciable part of that basis upon which it concluded that Sulie was sane beyond a reasonable doubt, and I am therefore unable to say that its admission was harmless beyond a reasonable doubt. I am deemed to vote that post conviction relief be granted.

DICKSON, J., concurs.