Eugene Keith SULIE, Petitioner,

v.

Jack R. DUCKWORTH; and Indiana, Respondents.

Civ. No. S88–425.

United States District Court, N.D. Indiana, South Bend Division.

Oct. 13, 1988.

Eugene Keith Sulie, Michigan City, Ind., pro se.

David A. Nowak, Deputy Atty. Gen., Indianapolis, Ind., for respondents.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

On July 13, 1988, *pro se* petitioner, Eugene Keith Sulie, filed a petition seeking relief under 28 U.S.C. § 2254. The return filed by respondents on August 25, 1988, demonstrates the necessary compliance with the mandates of *Lewis v. Faulkner*, 689 F.2d 100 (7th Cir.1982). The state record has been filed here and examined pursuant to the mandates of *Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). If ever a case has been "fully litigated," this is that case.

On December 3, 1976, the petitioner was convicted of First Degree Murder by a Lake County, Indiana, jury. After the jury verdict, the petitioner was sentenced to a term of life imprisonment. A direct appeal was taken to the Supreme Court of Indiana, which decided all alleged errors adversely to the petitioner. *Sulie v. State,* 269 Ind. 204, 379 N.E.2d 455 (1978). The Supreme Court of the United States denied certiorari on March 5, 1979. *See, Sulie v. Indiana,* 440 U.S. 948, 99 S.Ct. 1428, 59 L.Ed.2d 637 (1979).

Continuing with state proceedings, the petitioner filed a petition for post-conviction relief in the Lake Superior Court. The denial of that petition was affirmed by the Supreme Court of Indiana. *See Sulie v. State,* 522 N.E.2d 380 (Ind.1988).

In between state proceedings, the petitioner filed his first petition for a writ of habeas corpus. *See Sulie v. Duckworth,* S 81-172 (N.D.Ind.1981). This court's denial of that petition was affirmed by the Seventh Circuit Court of Appeals in *Sulie v. Duckworth,* 689 F.2d 128 (7th Cir.1982), *cert. denied,* 460 U.S. 1043, 103 S.Ct. 1439, 75 L.Ed.2d 796 (1983).

On September 11, 1986, the petitioner filed his second petition for a writ of habeas corpus in this court. That petition was denied by this court on February 2, 1987. *See Sulie v. Duckworth,* S 86-517 (N.D. Ind.1987). An appeal of that denial is currently before the Seventh Circuit.

The petitioner has now filed his third petition for a writ of habeas corpus in this court. This time the petitioner has presented five (5) alleged errors for relief. The grounds are as follows:

1) the petitioner was denied due process of law when evidence of his post-arrest request for an attorney was introduced at trial;

2) the petitioner was denied due process of law because of the ineffectiveness of his trial counsel;

3) the petitioner was denied due process of law because of an error in the final instruction on reasonable doubt;

4) the petitioner was denied due process of law because of the state's failure to produce a particular item of evidence at trial;

5) the petitioner was denied due process of law because of the alleged perjury of a state's witness.

The factual findings of the state courts with respect to the issues presented in this petition, including those set out in the opinions of the Supreme Court of Indiana, are entitled to deference by this court, and those findings, being fully supported by the record, provide an adequate basis for the decision herein. *See* 28 U.S.C. § 2254(d); *Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981); *Dooley v. Duckworth,* 832 F.2d 445 (7th Cir. 1987), *cert. denied,* 485 U.S. 967, 108 S.Ct.

1239, 99 L.Ed.2d 438 (1988); *United States ex rel. Haywood v. O'Leary*, 827 F.2d 52 (7th Cir.1987); *Bryan v. Warden, Indiana State Reformatory*, 820 F.2d 217 (7th Cir. 1987); *Shepard v. Lane*, 818 F.2d 615 (7th Cir.1987); and *Perri v. Director, Department of Corrections*, 817 F.2d 448 (7th Cir.1987).

█ It is the petitioner's burden to establish that the merits of an issue were not resolved against him in fair and full proceedings in the state courts. *Sumner v. Mata, supra.* In the absence of such a showing, as here, the court should accept the factual determinations of the Indiana courts, where relevant, on the issues. *Sumner v. Mata, supra; United States ex rel. Harris v. State of Illinois*, 457 F.2d 191 (7th Cir.1972).

This is especially true where, as in this case, the petitioner does not dispute the factual findings of the state courts.

*Issue I*

In this first issue, the petitioner complains about a single question and answer during the examination of Officer Douglas, a witness for the state. The question was: "Did he (petitioner) ask to contact an attorney?", and the answer of the officer was "yes." The state posed this question in order to counteract the petitioner's insanity defense. Apparently, the state hoped to create, in the jury's mind, the inference that only a sane person would request an attorney. Over objection, the trial judge allowed the question.

This issue was raised by the petitioner in his first habeas corpus petition. As noted earlier, the Seventh Circuit affirmed this court's denial of that petition.

Rule 9 of the Rules Governing § 2254 Actions provides:

(b) Successive petitions. A second or successive petition may be dismissed if the judge finds that it fails to allege new or different grounds for relief and the proper determination was on the merits or, if new and different grounds are alleged, the judge finds that the failure of the petitioner to assert those grounds in a prior petition constituted an abuse of the writ.

█ In order to determine whether a petitioner is precluded from relitigating an issue raised in a previously rejected petition the three-prong test announced in *Sanders v. United States*, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963), is used. In *Sanders*, the Court held that:

Controlling weight may be given denial of a prior application for federal habeas corpus on § 2255 relief only if (1) the same ground presented in the subsequent application was determined adversely to the applicant on the prior application, (2) the prior determination was on the merits, and (3) the ends of justice would not be served by reaching the merits of the subsequent application.

373 U.S. at 15, 83 S.Ct. at 1077 (footnote omitted); *Jacks v. Duckworth*, 857 F.2d 394 (7th Cir.1988).

Recently, it has been suggested that a fourth prong may be used to determine if a successive petition may be procedurally dismissed. In *Kuhlmann v. Wilson*, 477 U.S. 436, 106 S.Ct. 2616, 91 L.Ed.2d 364 (1986), Justice Powell stated:

In the light of the historic purpose of habeas corpus and the interests implicated by successive petitions for federal habeas relief from a state conviction, we conclude that the "ends of justice" require federal courts to entertain such petitions only where the prisoner supplements his constitutional claim with a colorable showing of factual innocence. This standard was proposed by Judge Friendly more than a decade ago as a prerequisite for federal habeas review generally. *Friendly, Is Innocence Irrelevant? Collateral Attack on Criminal Judgments*, 38 U.Chi.L.Rev. 142 (1970). As Judge Friendly persuasively argued then, a requirement that the prisoner come forward with a colorable showing of innocence identifies those habeas petitioners who are justified in again seeking relief from their incarceration. We adopt this standard now to effectuate the clear intent of Congress that successive federal habeas review should be granted

only in rare cases, but that it should be available when the ends of justice so require. The prisoner may make the requisite showing by establishing that under the probative evidence he has a colorable claim of factual inocence. The prisoner must make his evidentiary showing even though—as argued in this case—the evidence of guilt may have been unlawfully admitted.

*Id.* at 454, 106 S.Ct. at 2627.

■ The first two prongs of the *Sanders* test have been satisfied. The first issue was raised and rejected, on the merits, in the petitioner's first habeas corpus petition. Contrary to the respondents' assertion, the petitioner has satisfied the fourth prong by supplementing his constitutional claim with a "colorable showing of factual innocence."

Throughout the history of this case, the petitioner has contended that he was legally innocent, at the time of the shooting, by reason of insanity. The Seventh Circuit recently noted that if a defendant's evidence of insanity had been believed by the jury, the "insanity defense would have been as complete a defense as if he had proved he was in a foreign country on the day of the shooting." *Jacks, supra* (citing *Riggs v. State*, 264 Ind. 263, 265, 342 N.E.2d 838, 841 (1976)). Therefore, this discussion must necessarily focus on the third prong of the *Sanders* test.

■ In order to meet this third prong, a petitioner "is entitled to a new hearing upon showing that the evidentiary hearing on the prior application was not full and fair." *Sanders*, 373 U.S. at 16, 83 S.Ct. at 1077. The petitioner, if purely legal questions are involved, "may be entitled to a new hearing upon showing an intervening change in the law or some other justification for having failed to raise a crucial point or argument in the prior application." *Id.* at 17, 83 S.Ct. at 1078.

At the time of the petitioner's first petition for habeas corpus relief, the law in this circuit was that a defendant's post-*Miranda* warning request for counsel soon after the commission of the crime was admissible to show the defendant's sanity at the time he committed the crime. *See Sulie v. Duckworth*, 689 F.2d at 131.

Since that decision there has been an "intervening change in the law." In *Wainwright v. Greenfield*, 474 U.S. 284, 106 S.Ct. 634, 88 L.Ed.2d 623 (1986), the Supreme Court held that a criminal defendant's post-*Miranda* warning request to speak with an attorney before making any statement could not be used at trial as evidence of the defendant's sanity.

■ Now, with the luxury of hindsight, it is clear that the petitioner's request for counsel should not have been introduced at his trial and was, therefore, a due process violation. However, assuming that *Wainwright* is retroactive, this intervening change in the law does not affect the validity of Sulie's conviction. The admission into evidence of the challenged statement was harmless beyond a reasonable doubt. *See Jacks, supra; Fencl v. Abrahamson*, 841 F.2d 760 (7th Cir.1988).

In denying the petitioner's petition for post-conviction relief, the Supreme Court of Indiana found that:

In this case, the trial court allowed only one question and answer on this subject. The court, in a hearing outside of the jury, had ordered that no questions be asked with reference to Sulie's silence and that the witness be directed to make no comment on Sulie's silence. This order was followed. The interrogating police officer was asked if Sulie requested an attorney and he answered "yes." *No further evidence was offered on the subject and no comment was made by the prosecuting attorney on this evidence.* There was a great deal of evidence presented at the original trial regarding Sulie's sanity which included opinions of two psychiatrists both of whom found he was not insane.... Talbert McClendon who was shot by Sulie when Judy was killed, had known Sulie for six years and testified Sulie had boasted to him that he could "beat a murder rap" by pleading insanity.

*Sulie v. State*, 522 N.E.2d 380, 383 (Ind. 1988) (emphasis added).

Not all violations of the Constitution of the United States that occur during a trial necessitate the reversal of a guilty verdict. In *United States ex rel. Savory v. Lane,* 832 F.2d 1011 (7th Cir.1987), the Court of Appeals held that in assessing whether errors of constitutional magnitude, such as the one at issue here, are harmless beyond a reasonable doubt, "we must determine whether there is a reasonable possibility that the [errors] complained of might have contributed to the conviction." *Id.* at 1019. The Court of Appeals further held that the inquiry must center on "whether absent the constitutionally-forbidden evidence, honest and fair-minded jurors might very well have brought in not-guilty verdicts." *Id.*

As noted in the opinion of the Supreme Court of Indiana, there was only one mention of the petitioner's request for an attorney. No further evidence was offered on this subject. Additionally, two expert witnesses testified that Sulie was sane, and Talbert McClendon testified that the petitioner had boasted that he could "beat a murder rap" by pleading insanity.

The evidence convinces this court that the single question and answer concerning Sulie's request for an attorney, especially in light of the overwhelming evidence of sanity, was harmless beyond a reasonable doubt. *See Satterwhite v. Texas,* 486 U.S. 249, 108 S.Ct. 1792, 100 L.Ed.2d 284 (1988); *Schneble v. Florida,* 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972); *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Dudley v. Duckworth,* 854 F.2d 967 (7th Cir.1988); and *Jacks, supra.*

*Issue II*

■ The petitioner further alleges that his trial counsel was ineffective for failing to object when allegedly improper conduct occurred between jurors during voir dire. Specifically, the petitioner claims that his attorneys were ineffective for failing to seek a mistrial when it was revealed that several prospective jurors may have discussed a prior murder charge brought against the petitioner and his subsequent confinement in a mental institution.

In *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court of the United States held that the "benchmark for judging any claim of ineffective assistance of counsel must be whether counsel's conduct so undermined the proper function of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686, 104 S.Ct. at 2064. *Strickland* provided a two-step analysis under which the defendant must first show that counsel's performance was deficient, and second, that the deficient performance produced the defense so as to deprive the defendant of a fair trial. Under the first prong of the test, the reviewing court must determine whether trial counsel provided "reasonably effective" assistance considering all the circumstances. The defendant must show that counsel's representation fell below an objective standard of reasonableness. *Id.* at 688, 104 S.Ct. at 2064. *Strickland* and the cases following have made it clear that the defendant (or petitioner in a § 2254 claim) has a heavy burden proving a claim of ineffectiveness of counsel. *Id.* at 689, 104 S.Ct. at 2065. *See also United States v. Buchbinder,* 796 F.2d 910 (7th Cir.1986).

Judicial scrutiny of defense counsel's performance should be highly deferential. Reviewing courts are to presume that counsel's conduct falls within the range of reasonable, professional conduct. *See Michel v. Louisiana,* 350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed. 83 (1955). Defense counsel's conduct must be judged in the light of all circumstances as to the time the action was taken, and not as a result of hindsight. *Strickland,* 466 U.S. at 690, 104 S.Ct. at 2066.

The defendant (or petitioner) must demonstrate not only that counsel's performance was professionally unreasonable, but also that it must actually prejudice his or her defense. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104

S.Ct. at 2068. Thus, under this test, simply demonstrating that counsel's conduct was unreasonable does not establish prejudice to the defendant such that a new trial is required, or that a petition under § 2254 should be granted.

Although the Supreme Court in *Strickland* established a two-step analysis for reviewing ineffective assistance of counsel claims, where it is clear that the alleged deficiency in counsel's performance was not so substantial as to prejudice a defendant, it is unnecessary for a reviewing court to determine whether counsel's performance was in fact ineffective. In the absence of any showing of prejudice, claims should be dismissed without further inquiry into counsel's performance. *See id.* at 693, 104 S.Ct. at 2067; *Buchbinder,* 796 F.2d at 917; and *United States v. Noble,* 754 F.2d 1324, 1355 (7th Cir.1985).

The petitioner has failed to meet his burden because he has not shown any evidence of prejudice. The petitioner does not point out which jurors had conversations about his past. The petitioner does not allege that any of the prospective jurors who spoke about his past were even seated on the jury or heard the conversations. Even if they were, evidence of the petitioner's prior crime and confinement was frequently mentioned by witnesses who testified concerning the petitioner's sanity.

Because the petitioner has failed to show that he was prejudiced by his attorney's actions, this issue cannot be the basis for the issuance of a writ of habeas corpus.

*Issue III*

▮ The petitioner also contends that he was denied due process of law because of an error in the final instruction on reasonable doubt. The petitioner raised this issue in his direct appeal to the Supreme Court of Indiana. This is, however, the first time the petitioner has raised this issue in a petition for writ of habeas corpus. The petitioner has not informed this Court as to why this issue was not previously raised.

As noted earlier, Rule 9 of the Rules Governing § 2254 Actions provides for the denial of a petition "if new and different grounds are alleged [and] the judge finds that the failure of the petitioner to assert those grounds in a prior petition constituted an abuse of the writ."

An abuse of the writ may be found "if the failure to litigate the present claim on the previous application constituted a deliberate bypass or waiver." *Sanders v. United States,* 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963). If the government wishes to claim that the petitioner abused the writ, it rests with the government to make that assertion with "clarity and particularity in its order to show cause." Once an abuse has been alleged, the "petitioner has the burden of answering that allegation and of proving that he has not abused the writ. If the answer is inadequate, the court may dismiss the petition without further proceedings." *Price v. Johnston,* 334 U.S. 266, 68 S.Ct. 1049, 92 L.Ed. 1356 (1948); *Robinson v. Fairman,* 704 F.2d 368 (7th Cir.1983).

The state has affirmatively alleged that this issue constitutes an abuse of the writ by the petitioner. The petitioner has failed to answer this allegation. The petitioner has not informed this court why an issue that was known to him, which was raised over ten years ago, was not included in his first or second petitions for a writ of habeas corpus.

Under Rule 9 this court believes that it could dismiss this issue as an abuse of the writ. However, believing that a *pro se* petitioner should not be held to the same standards applicable to an attorney, *see Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); and *Jones v. Morris,* 777 F.2d 1277, 1279 (7th Cir.1985), the petitioner will be allowed to raise this issue at a future date as long as he can satisfy this court that he is not abusing the Great Writ. This issue is DISMISSED WITHOUT PREJUDICE.

*Issue IV*

▮ The petitioner alleges that he was denied due process of law because of the state's failure to retain a piece of "evidence." The evidence in question was a black hat recovered at the scene of the shooting and later lost by the police. The

petitioner claims that the hat was potentially exculpatory evidence because "it may have provided evidence in the form of hair samples which would indicate someone else committed the murder" (petitioner's memorandum, page 4).

In *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the Supreme Court of the United States held that any suppression by the prosecution of evidence that was favorable to an accused, upon request by the defendant, violated due process if the evidence was material either to guilt or to the punishment imposed on the accused.

In *California v. Trombetta,* 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984), the *Brady* decision was somewhat limited by the court's holding that the loss or destruction of evidence does not constitute a due process violation absent "a conscious effort to suppress exculpatory evidence." In addition to the element of bad faith, the court held that the destroyed evidence must be material to the defense. In order to determine materiality, the Supreme Court announced the following two-part test:

> "Whatever duty the Constitution imposes on the State to preserve evidence, that duty must be *limited to evidence that might be expected to play a significant role in the suspect's defense.* To meet this standard of constitutional materiality, evidence must possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means."

*Id.* at 488–89, 104 S.Ct. at 2533–34. (emphasis added) (citations omitted); *see also United States v. Zambrana,* 841 F.2d 1320 (7th Cir.1988); *United States v. Coe,* 718 F.2d 830 (7th Cir.1983).

A synthesis of the above cases yields the general rule that in order for the loss or destruction of evidence to rise to the level of a due process violation, there must have been bad faith on the part of the state officials involved, the evidence must have had some exculpatory value, and no other comparable evidence was available to the defendant.

The Supreme Court of Indiana found that:

> Sulie claims the state withheld exculpatory evidence in the form of a black hat discovered at the scene of the crime but which was inadvertently lost by the investigating police officer. The evidence was that Detective Douglas found a black hat at the scene but was unable to find any evidence to relate the black hat to this crime or any persons involved in it. . . . Sulie offers no evidence that the hat had any relevancy or probative value in this action. The scene of the crime was a public place in which other items also were found, such as a wig that was not indicated to have been related to this action. No witness testified any of the persons involved in this crime wore such a black hat. Sulie was directly identified by witnesses to the crime, and in fact, did not deny he was the perpetrator and presented an insanity defense.

*Sulie v. State,* 522 N.E.2d 380, 384 (Ind. 1988).

This court will again presume the correctness of the Supreme Court of Indiana's findings. 28 U.S.C. § 2254(d); *United States ex rel. Harris v. State of Illinois, supra.*

The petitioner in this case has failed to meet the first two requirements mandated by *Trombetta.* The petitioner does not allege, and no evidence exists, that the hat was deliberately lost or destroyed. There is also no basis to believe that the hat could have been exculpatory, beyond the petitioner's conclusory statements. Officer Douglas testified that he could find no evidence that the hat was in any way related to the crime. Additionally, it is difficult to see how the hat could have implicated someone else when the petitioner has never denied being the perpetrator of the crime. The petitioner relied on an insanity defense and there is no evidence or even an allegation that the hat could have contributed to that defense.

## Issue V

The petitioner's final contention is that he was denied due process of law because of the alleged perjury of a state's witness. The petitioner claims that the witness, Tolbert McClendon, committed perjury.

A habeas corpus petitioner must show that the prosecutor or other government officers knew that the testimony in question was false in order to prevail. *Hysler v. Florida*, 315 U.S. 411, 62 S.Ct. 688, 86 L.Ed. 932 (1942). It is only when public officers connive or knowingly acquiesce in the use of perjured evidence that their misconduct denies a defendant due process of law. *Napue v. Illinois*, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959).

In *Napue* the principal witness for the prosecution falsely testified that he had been promised no consideration for his testimony. The court held that the knowing use of false testimony to obtain a conviction violates due process regardless of whether the prosecution solicited the false testimony or merely allowed it to go uncorrected when it appeared.

The Supreme Court in *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), expanded *Napue* and held that a defendant is entitled to a new trial if he can establish that the state intentionally or *inadvertently* failed to correct materially false testimony that was relevant to the credibility of a government witness. *See also Ross v. Heyne*, 483 F.Supp. 798 (N.D.Ind.1980), *aff'd in part, rev'd in part*, 638 F.2d 979 (7th Cir.1980).

The clear import of the above cited cases is that a due process violation can only be found when the state is a knowing and willing participant in the alleged perjury, or the state knowingly or inadvertently allows perjured testimony to go uncorrected.

In this case, the petitioner does not say how or when McClendon committed perjury. The petitioner does not point out what portion of the testimony was perjured. Further, and most importantly, the petitioner does not suggest that the state had any knowledge of perjured testimony. The petitioner merely "asserts that Talbert McClendon is not a credible witness" (petitioner's memorandum, page 5). The credibility of witnesses is generally for juries and trial courts to determine and is not the role of this court acting pursuant to a request for a writ of habeas corpus under 28 U.S.C. § 2254.

Finally, it should be noted that when a petitioner presents only bald legal conclusions with no supporting factual allegations, the courts have the power to deny the petition on this ground alone.

The petitioner's writ of habeas corpus is DENIED, and this cause is DISMISSED. IT IS SO ORDERED.